# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JULIE VOEKS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CONTRACT CALLERS INC. and JH PORTFOLIO DEBT EQUITIES LLC, <br><br> Defendants. | Case No.: 18-cv-1017 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes, namely a personal credit card.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she allegedly engaged in consumer credit transactions – purchases of household goods and services with a personal credit card.

6. Defendant Contract Callers, Inc. ("CCI") is a debt collection agency with its principal offices located at 501 Greene Street, 3rd Floor Suite 302, Augusta, Georgia 30901.

7. CCI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CCI is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. CCI is licensed as a "collection agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. CCI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11. Defendant JH Portfolio Debt Equities, LLC ("JHP") is a foreign limited liability company with its primary offices located at principal offices located at 5757 Phantom Drive, Suite 225, Hazelwood, Missouri 63042.

12. JHP is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time JHP acquires them.

13. JHP uses third-party debt collection agencies, including CCI, to collect consumer debts originally owed to others and currently held by JHP. JHP, directly or indirectly, is a debt collector under this arrangement. 15 U.S.C. § 1692a(6). *See, e.g., ADE v. D & A Servs., LLC*, 2018 U.S. Dist. LEXIS 59144 (S.D. Fla. Apr. 5, 2018) (joint stipulation for dismissal of FDCPA claims against JHP and another third-party debt collector with prejudice).

2

14.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

15.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (N.D. Ill. Mar. 27, 2018).

16.     The primary purpose of JHP's business, and JHP's principal purpose, is the collection of consumer debts.  JHP's website contains an "About" webpage, which states:

3

> JH Portfolio Debt Equities is one of the nation's largest investors of unpaid debt, offering innovative and regulatory compliant end-to-end solutions for distressed credit consumers. The Firm invests in portfolios of consumer receivables and works with individuals as they repay their obligations.

*See* https://jhportfoliodebtequities.com/about-jh-capital-group/ (accessed April 20, 2018).

17.    JHP is engaged in the business of a collection agency, directly and indirectly using the mails and telephone to collect defaulted consumer debts.  JHP's website contains a "Consumer Resources" page, which states:

> If you are one of our consumers, you might have received something in the mail or received a call from us.  JH Portfolio Debt Equities, LLC acquires charged-off accounts from some of the nation's largest lenders and works with select partners to resolve the accounts with consumers.

*See* https://jhportfoliodebtequities.com/consumers/ (accessed April 20, 2018).

18.    Debt purchasers, including JHP, are also debt collectors as a matter of Wisconsin law.  On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

19.    Wis. Stat. § 427.103(3) defines debt collector:

> Any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.

(emphasis added).

20.    Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

21.    At a minimum, debt buyers like JHP engage in debt collection indirectly through their servicing agents, like CCI.  *See, e.g., Mitchell v. LVNV Funding, LLC*, 2017 U.S. Dist. LEXIS 206440 *16 ("'[t]here is no business purpose in purchasing charged off debts if the

ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

22.     JHP is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account, originally owed to Citibank, N.A. ("Citibank"). Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person."); *see Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *10-11 (E.D. Wis. Mar. 27, 2018) ("As the purchaser of Derosia's consumer debt from Synchrony, Tasman is the assignee or successor of a merchant under the WCA.").

23.     The WCA's debt collection chapter applies to all persons collecting, either directly or indirectly, consumer debts, including merchants collecting debts owed to themselves.

24.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

25.     The Wisconsin Department of Financial Institutions ("DFI") has likewise observed that merchants and creditors are "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

26.     In addition to mail and telephone communications, JHP also regularly uses Wisconsin courts in its debt collection activities. A general search on Wisconsin Circuit Court

Access ("CCAP") for "JH Portfolio" returns at least 353 actions filed and a general search for "JH Capital" returns at least 58 actions filed since 2014. Upon information and belief, all or almost all of these cases are collection actions against Wisconsin consumers.

27. JHP uses both standard collection methods, such as mail and telephone communications, and also civil lawsuits, in its collection business.

28. JHP is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

29. A company meeting the definition of a "debt collector" (here, JHP) is vicariously liable for the actions of a second company collecting debts on its behalf (here, CCI). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

### *Plaintiff's "Citi Double Cash Card" Credit Card Account*

30. Sometime prior to January 15, 2018, Plaintiff's "Citi Double Cash Card" credit card account, issued by Citibank and with an account number ending 5896, went into default.

31. On or about January 15, 2018, Citibank mailed Plaintiff an account statement regarding her alleged Citibank account ending in 5896. A copy of this account statement is attached to this complaint as Exhibit A.

32. Exhibit A contains the following:

| JANUARY STATEMENT | |
| --- | --- |
| Minimum payment due: | $691.81 |
| New balance as of 01/15/18: | $1,446.53 |
| Payment due date: | 02/13/18 |

Exhibit A.

6

33.     Exhibit A states that, as of January 15, 2018, Plaintiff's account had a "New Balance as of 01/15/18" in the amount of $1,446.53, a "Minimum payment due" of $691.81 and a "Payment due date" of February 13, 2018.

34.     On or about February 15, 2018, Citibank mailed Plaintiff an account statement regarding her alleged Citibank account ending in 5896.  A copy of this account statement is attached to this complaint as Exhibit B.

35.     Exhibit B contains the following:

| FEBRUARY STATEMENT | |
| --- | --- |
| Minimum payment due: | $1,474.10 |
| New balance as of 02/15/18: | $1,474.10 |
| Payment due date: | 03/13/18 |

Exhibit B.

36.     Exhibit B states that, as of February 15, 2018, Plaintiff's account had a "New Balance as of 02/15/18" of $1,474.10, a "Minimum payment due" of $1,474.10 and a "Payment due date" of March 13, 2018.

### Sale of Plaintiff's Account to Defendant JHP and Defendant CCI's Letter

37.     On or about March 26, 2018, CCI mailed a debt collection letter to Plaintiff regarding an alleged debt owed to JHP, originally owed to Citibank, and associated with Plaintiff's Citibank account ending in 5896.  A copy of this letter is attached to this complaint as Exhibit C.

38.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

39.     Upon information and belief, Exhibit C is a form debt collection letter used by CCI to attempt to collect alleged debts.

7

40.     Upon information and belief, <u>Exhibit C</u> was the first debt collection letter CCI mailed to Plaintiff regarding the alleged debt allegedly owed to JHP.

41.     <u>Exhibit C</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that a debt collector send within five days of the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit C</u>.

42.     <u>Exhibit C</u> also contains the following:

File Number: ████6944
Current Creditor: JH PORTFOLIO DEBT EQUITIES, LLC
Account Number: ████████5896
Original Account Number: ████████5896
Original Creditor: Citibank N.A.
Total Due: $1,446.53

<u>Exhibit C</u>.

43.     <u>Exhibit C</u> states that, as of March 26, 2018, Plaintiff's account with JHP had a "Total Due" of $1,446.53.

44.     Upon information and belief, Citibank sold Plaintiff's account to JHP along with a "portfolio" of other "bad," "distressed," or "toxic" credit card accounts. *See, e.g., Harvey v. Great Seneca Fin. Corp.*, 2005 U.S. Dist. LEXIS 37002, at *8 (S.D. Ohio July 18, 2005) (debt buyers may "specialize[] in the purchase of and the collection of distressed consumer debt consisting of old defaulted and delinquent obligations or accounts which it purchases in bulk and at a discount from prior creditors.").

45.     Upon information and belief, at the time Citibank sold this portfolio of accounts to JHP, Citibank transmitted underlying account information for these accounts to JHP and JHP and CCI access to this account information.

46.     Upon information and belief, at the time Citibank sold this portfolio of accounts to JHP, Citibank transmitted underlying account history for the accounts, including copies of Citibank's account statements.  *See Livermore v. Unifund CCR LLC*, 2018 U.S. Dist. LEXIS 12643, at *2-3 (E.D. Wis. Jan. 26, 2018).

47.     Upon information and belief, the account information that Citibank transmitted to JHP states that the "SALE AMOUNT" of the debt is $1,446.53 but that the "CURRENT BALANCE" of the debt is $1,474.10.  *See Livermore*, 2018 U.S. Dist. LEXIS 12643, at *2-3.

48.     Upon information and belief, the balance stated in <u>Exhibit C</u> letter, $1,446.53 is based on the balance stated in <u>Exhibit A</u> rather than the balance stated in <u>Exhibit B</u>.

49.     Upon information and belief, <u>Exhibit C</u> misstates the amount of the debt because it does not include the last month of interest.  *See Livermore*, 2018 U.S. Dist. LEXIS 12643, at *2-3.

50.     Understating the balance of the debt is a material misrepresentation.  *See Muller v. Midland Funding*, 2016 U.S. Dist. LEXIS 68939, at *6-8 (W.D. Mo. May 26, 2016) (denying judgment on the pleadings where debt buyer understated amount of the debt); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, *62-63 (D. Mass. Nov. 20, 2012) ("MEEB therefore understated the amount of legal fees owed for both units in the first May 17, 2005 letter.   MEEB's false representation of the amount of the debt through May 17, 2005, thus violated section 1692e(2)(A)."), *amended in part*, 969 F. Supp. 2d 74 (D. Mass. 2013), *aff'd in part, rev'd in part and remanded*, 775 F.3d 109, 127-28 (1st Cir. 2014) (affirming magistrate judge's finding that debt collector violated FDCPA but did not act willfully or knowingly because "in at least one instance, MEEB's incorrect statement about the amount owed by McDermott went in McDermott's favor (i.e., MEEB said he owed less than he really did), which

Case 2:18-cv-01017-LA     Filed 07/03/18     Page 9 of 32     Document 1

supports her finding that MEEB was not simply trying to increase its legal fees."); *Pickard v. Lerch*, 2005 U.S. Dist. LEXIS 45457, at *13 (S.D. Ind. May 26, 2005) ("The fact that Wright decided to underestimate the amount of debt allegedly owed rather than overestimate is unavailing."); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, 2011 U.S. Dist. LEXIS 88319, at *15 ("Plaintiff received a letter dated July 9, 2010 which stated a balance of $1,622.42 but had two credit card statements attached reflecting higher balances. There is no indication as to how Defendant reached the balance indicated on the letter when Plaintiff's balance as of the September, 2008 statement was $1,707.18 and the balance was accruing interest at a rate of 29.99%.").

51.     Understating the balance of a credit card debt has real life consequences for the consumer. Debt collectors generally do not forgive the difference between the understated balance and the real balance. Consumers who believe they have paid off an account in full are frequently contacted, sometimes years later, by the same or different debt collectors seeking the unpaid amount plus interest, which is often substantial. *See* https://www.ag.state.mn.us/consumer/publications/debtbuyers.asp ("In some cases . . . the debt buyer may pursue the collection of debt that was already paid . . . .").

52.     Where the "sale amount" of a debt is less than the charge off balance, even if debt buyers initially attempt to collect only the "sale amount," giving the appearance that the difference between the "sale amount" and the current balance was unilaterally forgiven, the debt collector may still attempt to collect the entire balance due at charge off. *See, eg. Midland Funding LLC v. Minh Tran Et Al*, Case No. CGC 14 542668 (Cal. Super. Ct., filed Nov. 12, 2014) (debt collector initially mailed collection letters seeking a "sale amount" of $1,816.44 but later sued for the charge off balance of $1,856.44).

10

53.     The unsophisticated consumer who paid the understated amount would be misled into believing that the account was paid in full when in reality, a portion remains unpaid.

54.     Moreover, the consumer would be confused and misled as to whether the letter was legitimate, and whether CCI and/or JHP---entities that she had not dealt with prior to receiving CCI's letter---were legitimate.  *See Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *10 (E.D. Wis. Mar. 27, 2018) ("A consumer sophisticated enough to do a little homework could be led to reach a conclusion (that the letter was a scam) that would have been wrong.  And such a consumer would have been led to that conclusion by the false and misleading statement in [the debt collector's] Notice."); *see,* https://www.ag.state.mn.us/consumer/publications/debtbuyers.asp ("More and more these days, individual citizens report being pursued by debt buyers they have never heard of, sometimes for collection of money they do not owe.  In some cases, the debt buyer may pursue the wrong person altogether, while in other cases the debt buyer may pursue the collection of debt that was already paid or that was in dispute (e.g., where the customer was a victim of identity theft).").

55.     Consumer debt-buyer scams are neither rare nor immaterial.  For example, thousands of consumers have been harmed because they improperly made payments to Citibank after their accounts had been assigned to third-party debt buyers, causing real harm to consumers.  *See* https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-citibank-to-provide-relief-to-consumers-for-illegal-debt-sales-and-collection-practices/ ("From 2010 to 2013, Citibank delayed forwarding to debt buyers nearly 14,000 payments made by consumers, totaling almost $1 million. This delayed the updating of account balances and subjected consumers to collection efforts from debt buyers after they had already, in reality, paid off their account.").

11

56.     Alternatively, <u>Exhibit C</u> states the correct amount of the debt but does so in an unfair, deceptive, and misleading way because it does not explain how the balance was calculated, information which the debtor needs to assess any interest or fees sought by Defendants may likewise have been invalid. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) (debtor stated claims under 15 U.S.C. §§ 1692e(2)(A) and 1692f because debt collector's failure to itemize an accurate, but confusing, balance impaired her ability to knowledgeably assess the validity of the debt); *Pickard v. Lerch*, 2005 U.S. Dist. LEXIS 45457, at *13-14 (S.D. Ind. May 26, 2005) (failure to explain contradiction between two different balances was materially misleading because "even if the Wright letter was not literally false in its statement of the amount of the debt, the Wright letter was confusingly misleading.").

57.     Additionally, <u>Exhibit C</u> contains the following options to resolve the debt:

① **DISCOUNT OFFER**
Pay $578.61 (60% Reduction) and your account will be considered "Satisfied" after we post your payment.
JH PORTFOLIO DEBT EQUITIES, LLC IS NOT REQUIRED TO RENEW THESE OFFERS.

② **MONTHLY PAYMENT PLAN**
Pay 4 monthly installments: 3 equal payments of $361.64 and a final payment of $361.61. Your account will be considered "Paid in Full" after your final payment posts to your account.

③ **ADDITIONAL PAYMENT OPTIONS**
Contact one of our Professional Representatives to discuss our various payment options.

<u>Exhibit C</u>.

58.     Options 1 and 2 are confusing and misleading to the consumer.

59.     Because the actual balance of the account is $1,474.10, not $1,446.53, the consumer would be confused and misled about whether the payment schedules described in Options 1 and 2 would, in fact, resolve the account.

60.     Moreover, Option 1 states that "JH PORTFOLIIO DEBT EQUITIES, LLC IS NOT REQUIRED TO RENEW THESE OFFERS."

61.     The statement that JHP is not required to renew these offers is false, deceptive, misleading, and confusing to the unsophisticated consumer.

62.     Exhibit C does not provide a settlement expiration date upon which the "offers" would need to be renewed.

63.     Upon information and belief, the statement that JHP "IS NOT REQUIRED TO RENEW THESE OFFERS" is a material false, deceptive, and misleading statement.

64.     In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector or the creditor is "not obligated to renew this offer," to mean that the debt collector or creditor, could---and would---rescind the settlement offer at any time and without notice.

65.     Upon information and belief, the debtor can settle the account pursuant to the terms offered in Exhibit C at any time.

66.     In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

67.     While Exhibit C tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

13

68.     As a practical matter, the unsophisticated consumer is not an FDCPA lawyer.  She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

69.     Instead, where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

70.     The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

71.     Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

72.     Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances.  *E.g., Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor  . . . for the kind of suit Bartlett has brought and now won.  The qualification 'for the kind of suit that Bartlett has brought and now won' is important.  We are not certifying our letter

14

against challenges based on other provisions of the statute; those provisions are not before us.");
*see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

73.    The safe-harbor language used in <u>Exhibit C</u> was created specifically for cases where a debt collection letter stated a settlement date certain.  Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability. *Al v. Van Ru Credit Corp.*, No. 17-CV-1738-JPS, 2018 U.S. Dist. LEXIS 70321 (E.D. Wis. Apr. 26, 2018).

74.    Moreover, CCI's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer.  *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

75.    The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying before the settlement offer "expired" (*i.e.*, was rescinded). *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

76.     Moreover, providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights.

77.     The settlement offer in Exhibit C is confusing to the unsophisticated consumer because it leads the consumer to believe she must tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

78.     The unsophisticated consumer, unsure when the settlement offer in Exhibit C expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment. Thus, there is an apparent contradiction between the settlement offer and the validation notice.

79.     The unsophisticated consumer would be confused about whether the settlement offer in Exhibit C would require her to forego her rights to validate the debt. *See, e.g., Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. ELXIS 108031, at *7-8 (E.D. Mo. Aug. 1, 2013) ("an unsophisticated consumer would likely believe that setting up payment arrangements *would act as a waiver of the right to dispute the debt*.") (emphasis added).

80.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer. *See Betz v. MRS BPO, LLC*, 2017 U.S. Dist. LEXIS 63236, at *15 (E.D. Wis. Apr. 26, 2017) ("Nothing in the FDCPA

16

suggests that a debt collector cannot give a consumer an incentive to simply settle the case rather than dispute that the debt is valid.").

81. The plain language of <u>Exhibit C</u> is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

82. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in <u>Exhibit C</u>, under the terms of <u>Exhibit C</u>, the debt collector might:

    a. Hold the payment in escrow pending verification of the debt;

    b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

    c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

83. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

84. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

17

85.     The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

86.     The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

87.     Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the settlement offer could be withdrawn before the consumer had effectively made the settlement payment.  By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

88.     Upon information and belief, the consumer is not required to forego her rights to obtain verification of the debt in order to take advantage of the options stated in Exhibit C.

89.      Plaintiff was deceived, misled, and confused by Exhibit C.

90.     The unsophisticated consumer would be deceived, misled, and confused by Exhibit C.

91.     Plaintiff had to spend time and money investigating Exhibit C, and the consequences of any potential responses to Exhibit C.

92.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to obtain counsel on the consequences of Exhibit C.

18

***The FDCPA***

93.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

94.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

95.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is

19

remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

96. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989)

97. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a

20

debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*,

21

No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

98.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e).  Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices.  *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"); *see also Patterson v. Howe*, 2018 U.S. Dist. LEXIS 54250, at *21-23 (S.D. Ind. Mar. 30, 2018).

99.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

100.     15 U.S.C. § 1692e(2)(A) specifically prohibits:  "The false representation of—the character, amount, or legal status of any debt."

101.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

102.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

103.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

104.    15 U.S.C. § 1692g states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1)  the amount of the debt;

(2)  the name of the creditor to whom the debt is owed;

(3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

105.    The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer:

23

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to **state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent.** We think the statute required this.

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (emphasis added).

106.    The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

107.    While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

108.    The Seventh Circuit has also held that a debt collector may not hide the character of a debt; thus where a balance is subject to adjustments that would potentially confuse the unsophisticated consumer as to the amount and character of the debt, "one simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise

24

the total amount of the debt." *Fields v. Wilber Law Firm P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

109.    Where a debt collector has actual or imputed knowledge that the balance of a debt is subject to charges or adjustments that would confuse or mislead a debtor as to the character of that debt, the debt collector must provide adequate notice and disclosure as to the character of the debt and the basis for the adjustments. *Acik v. I.C. Sys.*, 640 F. Supp. 2d 1019, 1023-25 (N.D. Ill. Aug. 6, 2009) ("The question under section 1692e is not whether these charges were fair or proper, but whether the fees were 'clearly and fairly communicated' so that Acik could ascertain the fees' validity.") (applying *Fields*, 383 F.3d 562 (7th Cir. 2004)).

### *The WCA*

110.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

111.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

112.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

113.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

114.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

115.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

116.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

117.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

118.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

119.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

120.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

121.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

122.    DFI has ruled that conduct that violates the FDCPA also violates the WCA.

**DFI−Bkg 74.16 Oppressive and deceptive practices prohibited.** A licensee shall not engage in any oppressive or deceptive practices. In attempting to collect an alleged account, bill or other indebtedness, a licensee shall not do any of the following: …

**(9)** Engage in other conduct which can reasonably be expected to threaten or harass the debtor or a person related to the debtor including conduct which violates the Federal Fair Debt Collection Practices Act.

123.    Misrepresenting the amount of the debt and the name of the creditor is "conduct which violates the [FDCPA]" and WCA. 15 U.S.C. § 1692e(2)(a), 1692g(a)(1); Wis. Admin. Code § DFI-Bkg 74.16(9).

## COUNT I – FDCPA

124.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

125.    Count I is brought against both Defendants.

126.    Exhibit C states that the "Total Due" is $1,446.53 but, upon information and belief, the account information Citibank transmitted, which JHP and CCI had prior to sending Exhibit C, shows that JHP and CCI knew or should have known that the "Current Balance" of the account was $1,474.10.

127.    Defendants misrepresented the amount of the debt.

27

128. Defendants knew Plaintiff had not made a payment on the account since it had charged off.

129. Defendants knew that Exhibit C's use of the phrase "Total Due" alongside Defendants' attempt to collect an amount less than the current account balance, would confuse the unsophisticated consumer about the amount, character, and legal status of the debt because Defendants knew Plaintiff had recently received an account statement attempting to collect a greater amount on the same account. *See Fields*, 383 F.3d at 566.

130. Defendants failed to provide any explanatory language or itemization of credits to clarify why the amount of the debt decreased after charge off even though Plaintiff had not made a payment.

131. The "DISCOUNT OFFER" and "MONTHLY PAYMENT PLAN" offered in Exhibit C are confusing and misleading to consumer because the consumer would not know whether payments according to the schedule stated in Exhibit C would actually resolve the account.

132. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692g(a)(1), and 1692g(a)(2).

## COUNT II – FDCPA

133. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

134. Count II is brought against both Defendants.

135. Exhibit C contains false, deceptive, misleading, and confusing statements about the discount and monthly payment plans offered in Exhibit C.

136. <u>Exhibit C</u> is false, deceptive, misleading, and confusing as to the "expiration" of the offers in <u>Exhibit C</u>.

137. <u>Exhibit C</u> contains implied and false threat that CCI, or JHP, will rescind the offer at any time and without notice.

138. <u>Exhibit C</u> implies to the consumer that the consumer cannot request verification of the debt and, assuming the debt is valid, accept the payment plans offered in <u>Exhibit C</u>.

139. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a)(3), and 1692g(a)(5), and 1692g(a)(5).

## <u>COUNT III – WCA</u>

140. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

141. Count III is brought against both Defendants.

142. CCI is licensed as a Collection Agency by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. Ch. 74.

143. <u>Exhibit C</u> states that the "Total Due" is $1,446.53 but, upon information and belief, the account information Citibank transmitted, which JHP and CCI had prior to sending <u>Exhibit C</u>, shows that JHP and CCI knew or should have known that the "Current Balance" of the account was $1,474.10.

144. Defendants misrepresented the amount of the debt.

145. Defendants knew Plaintiff had not made a payment on the account since it had charged off.

146. Defendants knew that <u>Exhibit C</u>'s use of the phrase "Total Due" alongside Defendants' attempt to collect an amount less than the current account balance, would confuse

29

the unsophisticated consumer about the amount, character, and legal status of the debt because Defendants knew Plaintiff had recently received an account statement attempting to collect a greater amount on the same account. *See Fields*, 383 F.3d at 566.

147. Defendants failed to provide any explanatory language or itemization of credits to clarify why the amount of the debt decreased after charge off even though Plaintiff had not made a payment.

148. The "DISCOUNT OFFER" and "MONTHLY PAYMENT PLAN" offered in Exhibit C are confusing and misleading to consumer because the consumer would not know whether payments according to the schedule stated in Exhibit C would actually resolve the account.

149. Misrepresenting the amount of the debt is "conduct which violates the [FDCPA]" and WCA. 15 U.S.C. § 1692e(2)(a), 1692g(a)(1); Wis. Admin. Code § DFI-Bkg 74.16(9).

150. Defendants violated Wis. Stat. § 427.104(1) and Wis. Admin. Code § DFI-Bkg 74.16(9).

## CLASS ALLEGATIONS

151. Plaintiff brings this action on behalf of two Classes.

152. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt owed to JHP and originally owed to Citibank, (d) which debt was incurred for personal, family or household purposes, (e) in which CCI represented the balance to be the "SALE AMOUNT," instead of the "CURRENT BALANCE" as provided by Citibank, (f) between July 3, 2017 and July 3, 2018, inclusive, (g) that was not returned by the postal service. Excluded from the class are individuals whose

30

differences in balance are attributed solely to additional interest assessed by Defendants after Citibank assigned the debt to Defendants, and individuals whose "SALE AMOUNT" and "CURRENT BALANCE" data from Citibank are identical in amount.

153.   Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt owed to JHP and originally owed to Citibank, (d) which debt was incurred for personal, family or household purposes, (e) in which CCI represented the balance to be the "SALE AMOUNT," instead of the "CURRENT BALANCE" as provided by Citibank, (f) between July 3, 2017 and July 3, 2018, inclusive, (g) that was not returned by the postal service.  Excluded from the class are individuals whose differences in balance are attributed solely to additional interest assessed by Defendants after Citibank assigned the debt to Defendants, and individuals whose "SALE AMOUNT" and "CURRENT BALANCE" data from Citibank are identical in amount.

154.   Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

155.   There are questions of law and fact common to the members of the each class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

156.   Plaintiff's claims are typical of the claims of the members of each class.  All are based on the same factual and legal theories.

157.    Plaintiff will fairly and adequately represent the interests of the members of each class.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

158.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

159.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  July 3, 2018

                                   **ADEMI & O'REILLY, LLP**

                                   By:    /s/ Mark A. Eldridge
                                          John D. Blythin (SBN 1046105)
                                          Mark A. Eldridge (SBN 1089944)
                                          Jesse Fruchter (SBN 1097673)
                                          Ben J. Slatky (SBN 1106892)
                                          3620 East Layton Avenue
                                          Cudahy, WI 53110
                                          (414) 482-8000
                                          (414) 482-8001 (fax)
                                          jblythin@ademilaw.com
                                          meldridge@ademilaw.com
                                          jfruchter@ademilaw.com
                                          bslatky@ademilaw.com